### IN THE UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LAWRENCE J. HESS and VICKIE C. WARREN, | ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 09-3334 |
| KANOSKI & ASSOCIATES, A Professional Corporation, RONALD J. KANOSKI, and KENNITH W. BLAN, JR., | ) ) ) ) ) | |
| Defendants. | ) | |

### OPINION

This matter comes before the Court on the Defendants' Motion for Summary Judgment Or In the Alternative Motion to Dismiss.  See d/e (36) (the "Motion").  For the reasons stated below, the Motion is ALLOWED.

### FACTS

Plaintiff Lawrence J. Hess ("Hess"), a Missouri resident, was an associate at a Springfield, Illinois area law firm Defendant Kanoski & Associates, A Professional Corporation (the "Firm").  Hess, who specialized in medical malpractice cases, worked at the Firm pursuant to an Employment Agreement.  Among other things, the Employment Agreement set forth Hess' salary and bonus pay.  It also stated that Hess

1

"has no proprietary right or interest in any client." Furthermore, the Employment Agreement stated that "where the [Firm] retains clients upon [e]mployee's termination that [e]mployee has no proprietary interest in fees to be earned since the [e]mployee is to be fully compensated through his salary and/or bonus for all work done while an [e]mployee of the [Firm]." The Employment Agreement also provided that employees, upon termination, would not "notify, advise, solicit[,] or otherwise contact clients of the [Firm]" and "not to interfere in any manner with the contractual relationship between [the Firm] and its clients."

In addition to the Employment Agreement, the Firm issued an Employee Manual. The Employee Manual contained the Firm's various policies regarding office administration, etc.

Defendant Ronald J. Kanoski ("Kanoski"), the Firm's principal, terminated Hess on February 14, 2007. Kanoski explained that the Firm would no longer handle medical malpractice cases. Hess did not collect his professional and personal items from his office at that time. Rather, he was permitted to come back at a later date to retrieve those items. When Hess returned to pick up his things, he found that his office had been cleaned out and his affects (*i.e.* business cards, birthday cards, copies of pleadings, etc.) were thrown away.

The cases Hess worked on and the clients he serviced for the Firm included

Ronald O. Loyd, Cathy Loyd, Robert K. Thompson, 170 Dow Corning Breast Implant Plaintiffs, Denise Lowery, Cathy Fetterman, Penny Eller (as Special Administrator for the Estate of Terry Eller), Julie Hoelscher and Carl Hoelscher (collectively the "Clients"). Several of the Clients signed contingent fee contracts with the Firm. The Firm executed these via its principal Kanoski. Hess was never a signatory.

Upon Hess' termination, the Clients and their cases were handled by Kanoski, the Firm and Defendant Kennith Blan (an attorney who had his own private practice, but who worked on some of the Firm's cases under a fee sharing arrangement).[1]

Following his termination, Hess became "of counsel" with The Rex Carr Law Firm in East St. Louis, Missouri. Several of the cases Hess worked Kanoski and the Firm were tried or settled during Hess' employment with The Rex Carr Law Firm. Thus, Hess filed liens against those cases and asserted a right to be paid a percentage of all sums recovered. Hess maintained that his Employment Agreement entitled him to a percentage of all cases he worked on even though recoveries in those cases did not occur until after Hess' termination.

Hess demanded that Kanoski and the Firm pay him $316,616.21 for all salary, bonus pay and vacation time it owed him. Hess asserted that he was entitled to that sum pursuant to his Employment Agreement and a June 21, 2002, letter which

---

[1]Blan worked on cases jointly with the Firm prior to Hess' termination as well.

purportedly increased his bonus rate from that which was originally specified in the Employment Agreement.

The contractual, statutory and equitable liens Hess filed were adjudicated by various state courts and held invalid. See, e.g., Loyd v. Billiter, et al., 5-09-0065 (Ill.App.Ct. (Oct. 15, 2010)). While that was occurring, Hess filed the instant case wherein he alleged claims under the Illinois Wage Payment and Collection Act, the Illinois Consumer Fraud Act, wrongful discharge, breaches of contract, inducing breaches of contract, various types of tortious interference, unjust enrichment/quantum meruit, spoliation, breach of fiduciary duty and civil conspiracy. See Complaint at 14-18 (d/e 1). Hess' wife, Plaintiff Vickie C. Warren, also filed a loss of consortium claim as part of the Complaint. Id. at 18.

The Defendants have collectively moved for summary judgment under Federal Rule of Civil Procedure 56(c) or dismissal under Federal Rule of Civil Procedure 12(b)(6). See d/e 36. The Plaintiffs responded by filing Plaintiffs' Brief In Opposition to Defendants' Motion for Summary Judgment. See d/e 46 (the "Opposition Brief").[2] Thereafter, the Defendants collectively replied to the Plaintiff's

---

[2]As part of their Opposition Brief, the Plaintiffs summarily asserted that summary judgment should not be considered until the Plaintiffs completed discovery. See id. at 1. However, the Plaintiffs never supported that assertion with the requisite affidavit. See Fed.R.Civ.P. 56(d)(2) (stating that a nonmovant must show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition"). Moreover, because the Opposition Brief fully responded to all of the Defendants' summary judgment arguments,

Opposition Brief.  <u>See</u> d/e 47.  The matter is now ripe for this Court's ruling.

## JURISDICTION & VENUE

All Defendants are Illinois residents, all Plaintiffs are Missouri residents and the amount in controversy exceeds $75,000.  Therefore, the Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1).  Personal jurisdiction exists because the Defendants, conducted their business in Illinois.  <u>See</u> <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980) (personal jurisdiction exists where a defendant "'purposefully avail[ed] itself of the privilege of conducting activities'" in the forum state), quoting <u>Hanson v. Denckla</u>, 357 U.S. 235, 253 (1958).  Venue exists because Defendants Kanoski and the Firm reside in Illinois  and within this judicial district. <u>See</u> 28 U.S.C. §1391(a)(1).

## STANDARD OF REVIEW

A court may grant summary judgment when the "pleadings, the discovery, and discovery materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).  A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d

---

Rule 56(d) relief would not have been permissible.

5

202 (1986).  The movant bears the burden of establishing that there exists no genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  If the movant meets this burden, the non-movant must set forth specific facts demonstrating that there is a genuine issue for trial. Fed.R.Civ.P. 56(e); Anderson, 477 U.S. at 252.

In deciding a motion for summary judgment, the court can only consider sworn statements based on personal knowledge and other evidence that would be admissible at trial under the Federal Rules of Evidence.  Stinnett v. Iron Works Gym/Executive Health Spa, Inc., 301 F.3d 610, 613 (7th Cir. 2002).  The evidence is viewed in the light most favorable to the non-movant and "all justifiable inferences are to be drawn in his favor." Anderson, 477 U.S. at 255, 106 S.Ct. 2505.  Summary judgment is inappropriate when alternate inferences can be drawn from the evidence, as the choice between reasonable inferences from facts is a jury function. Id.; Spiegla v. Hull, 371 F.3d 928, 935 (7th Cir. 2004).

## APPLICABLE LAW

As this case is founded on diversity jurisdiction, the Court "must apply the law of the state as it believes the highest court of the state would apply it if the issue were presently before that tribunal." State Farm Mut. Auto. Ins. Co. v. Pate, 275 F.3d 666, 669 (7th Cir. 2001).  Absent controlling authority from the State's highest court,

federal courts exercising diversity jurisdiction may consider decisions of the State's lower courts, courts of other jurisdictions and other persuasive authority. See Stephan v. Rocky Mountain Chocolate Factory, Inc., 129 F.3d 414, 417 (7th Cir. 1997). Thus, the Court will apply controlling Illinois authority.

## ANALYSIS

The Court first considers all of Hess' claims. It will then address his wife's loss of consortium claim.

### *Illinois Wage Payment and Collection Act*

The Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.* ("IWPCA") does not confer any rights to recovery of final compensation in the absence of a contractual right." Byker v. Sequent Computer Sys., Inc., 96 C 2297, 1997 WL 639045, at *7 (N.D.Ill. Oct. 1, 1997); Rakos v. Skytel Corp., 954 F.Supp. 1234, 1240 (N.D.Ill.1996)(same).

Section 5 of the IWPCA provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5 (West 2006). The IWPCA states that an employer must pay an employee his final compensation at the time of separation. Id. at 115/1. Final compensation is

defined to include "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed by the employer pursuant to an employment contract or agreement between the 2 parties." Id. at 115/2.

In relevant part, Hess' Employment Contract states that Hess' salary is $60,000 and he is to receive bonus pay equal to "15% of all fees generated over the base salary (or $5,000 per month) with a guarantee of One Hundred and Twenty Five Thousand ($125,000). Bonus shall increase to 25% of all fees received annually in excess of $750,000.00". See Employment Contract at 3-4. On June 21, 2002, Kanoski wrote Hess a letter (the June 21 Letter) promising a new bonus structure. The June 21 Letter purportedly increased Hess' salary to $100,000 and made him "eligible to receive a bonus of 40% of all fee revenue generated except as follows: a) no bonus will be paid on the first $100,000 of all annual fee revenue generated; and b) if it is otherwise eligible, only a 10% bonus will be paid for fees generated on the Robert Thompson file." See d/e 1-3 at June 21 Letter; see also, Defendants' Reply at 2.

While Hess' Complaint contends that the Firm owes him $316,616.21 pursuant to the Employment Agreement and June 21 Letter, his claim fails because he

subsequently admitted that he was paid all he was due.[3]  In his deposition testimony, Hess states that the Firm made direct deposits to his bank account for his salary, bonuses and vacation pay.  See Hess Dep. at 103-107.  Upon his termination, the Firm made a direct deposit to pay Hess all outstanding amounts it owed him.  Id.  When the Firm realized the amount of the direct deposit was too large, it reversed the deposit—but the Firm took back more money than it should have.  See Hess Dep. at 103-106.  Ultimately, Hess stated "we eventually worked it out".  Id. at 108.  Hess also admitted that "[b]onus checks which [he] received while employed at the Firm were in the correct amount.  See Opposition Brief at 9, General Fact 17.

In an attempt to overcome these admissions, Hess filed an affidavit stating he has not been paid bonuses for all cases which settled during the time he worked for the Firm.  See Opposition Brief, d/e 46-1 (Hess Affidavit at 10, ¶ 48).  Because the affidavit's statement is contrary to Hess' deposition testimony, it must be ignored.

_____

[3]The June 21 Letter is problematic.  While all parties treat it as if it is binding, the document was never signed by Hess.  Section 14 of the Employment Agreement requires that "[n]o change or modifications of th[e Employment] Agreement shall be valid unless in writing and signed by [Hess] and [the Firm]" and Section 14 prohibits waiver of this provision.  Hess' failure to provide written acceptance—to say nothing of the lack of consideration—means the June 21 Letter is not a valid agreement.  See Sheller v. Frank's Nursery & Crafts, Inc., 957 F.Supp. 150, 154 (N.D.Ill.1997)(a legally enforceable contract requires offer, acceptance and consideration).  The June 21 Letter is, as Hess variously characterizes it, a "promise".  See Opposition Brief at 9, General Fact 17. Moreover, because Hess admits he was fully paid, he cannot prove damages.  See Premier Electrical Construction Co. v. City of Chicago, 512 N.E.2d 44 (Ill. 1987)(to state a breach of contract claim, a party must allege the existence of a valid contract, the party's performance of all contractual conditions, the opponent's breach of the contract and consequential damages).

See Bank of Illinois v. Allied Signal Safety Restraint Systems, 75 F.3d 1162, 1173 (7th Cir. 1996)(a party cannot create an issue of fact by simply submitting an affidavit which directly contradict the party's earlier sworn comments; a court rightly ignores the later submission since it creates no genuine factual dispute)(Cudahy, J. concurring) (citations omitted).

As an additional matter, the Defendants argue that Hess' claim is collaterally estopped. The doctrine of collateral estoppel prevents the relitigation of issues resolved in earlier causes of action. See Du Page Forklift Service, Inc. v. Material Handling Services, Inc., 744 N.E.2d 845 (Ill. 2001). The doctrine applies if:

> (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.

See Gumma v. White, 833 N.E.2d 834 (Ill. 2005).

In Loyd v. Billiter, et al., 5-09-0065 (Ill.App.Ct. (Oct. 15, 2010)) Hess represented a medical malpractice claimant on behalf of the Firm. Hess' work was governed by the same Employment Agreement at issue here. After the Firm terminated Hess, Hess filed a lien against the case. Pursuant to the lien litigation, Hess submitted a brief arguing that his lien entitled him to bonus money based on a percentage of the Loyd settlement even though if he was terminated before the

settlement occurred.  See d/e 1 at Exhibit 6 ("Brief in Response to the Loyds' Petition to Adjudicate Attorneys' Fee Lien Pursuant to 770 ILCS 5/1").  The Loyd court rejected Hess' argument.  It stated:

> The record also supports that the trial court's finding that Hess's employment contract [the Firm] would bar any claim he has for further compensation for his work on the Loyd litigation.  Under the plain language of the contract, Hess had no proprietary right or interest in representation of plaintiffs.

See Loyd, 5-09-0065 at 4.

Since Loyd specifically found that the Employment Agreement barred "any claim [Hess] has for further compensation", the court issued a final judgment, and Hess was a party to the Loyd case, Hess is collaterally estopped from seeking compensation related to the Employment Agreement.  Thus, collateral estoppel bars Hess' IWPCA claim and precludes him from seeking any bonus payments.  Therefore, the Defendants are entitled to summary judgment on Hess' IWPCA claim.

***Illinois Consumer Fraud Act***

The Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505/2 (West 2006) ("ICFA"), provides a remedy for "unfair methods of competition and unfair or deceptive acts or practices" in specified commercial transactions.  "[U]nfair or deceptive acts or practices" under the statute include "false promise[s], misrepresentation [s] . . . or omission[s] of any material fact." Id.

A complaint made pursuant to the ICFA "must be pled with the same specificity as that required under common law fraud". See Elson v. State Farm Fire & Cas. Co., 691 N.E.2d 807, 816 (1998); see also, Davis v. G.N. Mort. Corp., 396 F.3d 869, 883 (7th Cir. 2005)(ICFA claims are subject to Fed.R.Civ.P.9(b) pleading standards). In order to be held liable for a violation of the ICFA, Hess must establish that: (1) the defendant undertook a deceptive act or practice; (2) the defendant intended that the plaintiff rely on the deception; (3) the deception occurred in the course of trade and commerce; (4) actual damage to the plaintiff occurred; and (5) the damage complained of was proximately caused by the deception. See Connick v. Suzuki Motor Co., Ltd., 675 N.E.2d 584, 593 (1996).

Hess' Complaint alleges that the Defendants:

used false pretense, false promise, deception and concealment, suppression and omission of material facts, with the intent that Hess and others rely on the concealment, suppression, or omission of such fact, and caused the likelihood of confusion regarding services, passed off Hess's services as those of another, and disparaged Hess's services by false or misleading representations of fact . . . .

Id. at 15, ¶ 57.

Hess' vague allegations do not come close to satisfying Rule 9(b). Id. (stating that "a party must state with particularity the circumstances constituting fraud"); see also Davis, 396 F.3d at 883. Moreover, his Opposition Brief makes no attempt to show how his ICFA allegations satisfy any of the five-factors discussed in Connick.

Therefore, Hess' ICFA is defective and incapable of surviving summary judgment.

*Wrongful Discharge*

Although Hess had an employment contract with the Firm, he does not claim that it was for a specific duration. Thus, Hess' employment was not for a fixed time period and was terminable-at-will. See Ring v. R.J. Reynolds Industries, Inc., 597 F.Supp. 1277, 1280 (N.D.Ill.1984). An employer may discharge an employee-at-will for any reason or for no reason at all. See Hartlein v. Illinois Power Company, 601 N.E.2d 720, 728 (1992). Illinois does not permit a terminated employee-at-will to sue his employer generally for wrongful discharge. Id.

However, a terminated at-will employee may bring an action for retaliatory discharge. Id.; Fellhauer v. City of Geneva, 568 N.E.2d 870, 875-76 (Ill. 1991). To prevail on a retaliatory discharge claim a plaintiff must prove: (1) the employer terminated him in retaliation for his activities; and (2) that the discharge is in contravention of a clearly mandated public policy. Id. To successfully plead the first element, a plaintiff must allege a causal relationship between her activities and the discharge. Hinthorn v. Roland's of Bloomington, 519 N.E.2d 909, 912 (1988). A plaintiff is not required to use any particular language so long as a fair reading of the amended complaint informs the defendants of "the activity which plaintiff claims she was discharged in retaliation for . . . ." Id.

Hess' Complaint contains no allegations of retaliation. Rather, Hess merely alleges that the Firm terminated him after deciding it would no longer handle medical malpractice cases. See Complaint at 11, ¶ 42. As such, Hess does not allege that he engaged in any activity which caused his discharge. See Hinthorn, 519 N.E.2d at 912. Hess' discharge was based on the Firm's business decision not to handle the types of cases on which Hess worked. Furthermore, because Hess' Opposition Brief does not properly respond to the Defendants' argument for dismissal and does not offer any contentions or authority which show contravention of a clearly mandated public policy, Hess' wrongful discharge claim is further defective. See Local Rule 7.1(D)(2)(c)(responses to a movant's argument must be included in argument section of non-movant's brief and must explain reasons why summary judgment should be denied); see also, Fellhauer, 568 N.E.2d at 875-76.

### Breaches of Contract

Hess' Complaint alleges that the Firm:

> violated its promises to Hess with regard to: (a) Compensation; (b) Amendment; (c) Term of Employment; (d) Covenant Limiting Competition; (e) A Message From Ron; (f) Employee Relations; (g) Client Relations; (h) Open Door Policy; (i) Disciplinary Action; and (j) Terms of Employment [and] became liable to Crossclaim/Third-Party Plaintiffs for the direct, special, incidental and consequential damages caused by its breaches of contract.

Id. at 16-17, ¶ 58.[4]

With respect to "Compensation", Hess admitted during his deposition that he was paid his salary, bonus money and vacation pay up to the date of his termination. See Hess Dep. at 103-108.  He specifically stated "we eventually worked it out".  Id. at 108.  Furthermore, for reasons explained above, Hess had no right to bonus money for any recoveries which occurred after his termination.

Hess' admission that he received all salary, bonus money and vacation pay also dooms any claim he may have for a violation of his "Term of Employment".  For while it appears that the Firm did not give Hess the contractually specified 30-days advance notice of termination, his damages for that breach would be 30-days pay. Since Hess admits to receiving his salary, he has no damages and thus no claim based on "Term of Employment".

The items entitled "A Message From Ron", "Employee Relations", "Client Relations", "Open Door Policy", and "Disciplinary Action" are not part of any contract.  They are provisions in the Firm's "Employee Manual".

In Duldulao v. Saint Mary of Nazareth Hospital Center, 505 N.E.2d 314 (Ill. 1987), the Illinois Supreme Court held that "an employee handbook or other policy

---

[4]The reference to "Crossclaim/Third-Party Plaintiffs" appears to come from some other pleading which Hess' counsel copied into the Complaint.  There is no crossclaim and there are no third-party plaintiffs in this case.

15

statement creates enforceable contractual rights" if three conditions were met: (1) it contains "a promise clear enough that an employee would reasonably believe that an offer has been made"; (2) "the employee is aware of its contents and reasonably believes it to be an offer"; and (3) the employee accepts the offer "by commencing or continuing to work after learning of the policy statement." Put another way, the court held that a plaintiff can state a claim for breach of contract based on employment-related policy statements if the plaintiff alleges traditional breach of contract elements. See Unterschuetz v. City of Chicago, 803 N.E2d 988, 993 (Ill. 2004). Since Hess makes no argument regarding how the Defendants violated the Employee Manual and there is no evidence that Hess was proximately injured by any violation, he cannot withstand summary judgment.

As for "Amendment", Hess' Complaint alleges that the Employment Agreement contained an "Amendment" which stated that the Employment Agreement superseded all other agreements; changes and modifications had to written and signed by the Hess and the Firm; and no waiver to the Employment Agreement would be valid unless in writing and "signed by the person or party to be charged." See Complaint at 4-5, ¶ 14. There is no evidence that the "Amendment" provision has been violated or that Hess suffered any damages related to the "Amendment" provision. Accordingly, neither this nor any other component of Hess' breach of contract claim can survive summary

judgment.

### *Inducing Breaches of Contract*

"It is well settled that an action will lie ex delicto against one who intentionally and knowingly and without reasonable justification or excuse induces a breach of a contract." <u>W.P. Iverson & Co. v. Dunham Manufacturing Co.</u>, 152 N.E.2d 615, 621 (Ill.App.Ct. 1958). Hess contends that Defendant Kennith Blan, Jr. induced the Firm to breach its Employment Contract with Hess. <u>See</u> <u>Complaint</u> at 16, ¶ 59. The evidence shows otherwise.

The evidence shows that the Firm terminated Hess—an attorney who specialized in medical malpractice cases—because the Firm stopped handling medical malpractice cases. Blan took over some medical malpractice cases for the Firm as it wound down that practice area.

The only evidence Hess offers about Blan's potential misconduct are allegations that Blan disparaged and took credit for Hess' work when speaking to a Client (Loyd). <u>See</u> <u>Opposition Brief</u> at 18. Even if true, Blan's actions are immaterial to any of the contracts in this case. Since Loyd never had a contract with Hess, and Loyd never breached his contract with the Firm, Blan's comments to Loyd are irrelevant. As for Hess' Employment Agreement, there is no evidence that the Firm knew about any of Blan's comments to Loyd or acted based on any of the alleged comments. Rather, the

evidence shows that the Firm terminated Hess because the Firm was no longer handling medical malpractice cases.

## *Tortious Interference*

Hess contends that the Defendants' intentional diversion of his clients and fees makes the Defendants liable for "tortious interference with contracts, business expectancies, and economic advantages". See Complaint at 16, ¶ 60. Hess' Complaint treats the aforementioned torts as if they were one single cause of action. His Opposition Brief is not much more discerning. See id. at 28-32.

### *A. Tortious Interference With Contracts*

To state a claim for tortious interference with contractual rights, a plaintiff must plead: (1) the existence of a contract; (2) the defendants' awareness of the contract; (3) the intentional inducement of a contract breach; (4) an actual breach of the contract; and (5) damages. See HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc., 545 N.E.2d 672, 676 (1989). Hess premises his claim on the Defendants alleged violation of contract rights he had with the Clients and the liens he filed. Neither of Hess' premises are valid.

Since each Client signed a Contingent Fee Contract with the Firm, the Clients

were clients of the Firm—not clients of Hess.[5]  Furthermore, a lien is not a contract. It is a " 'legal right or interest that a creditor has in another's property, lasting usu[ally] until a debt or duty that it secures is satisfied.' " See Compton v. Country Mutual Insurance Co., 887 N.E.2d 878 (Ill. 2008), quoting Black's Law Dictionary 933 (7th ed. 1999).  Because Hess cannot satisfy the first element of a tortious interference claim, his tortious interference claim cannot survive summary judgment. See HPI Health Care Servs., Inc., 545 N.E.2d at 676.

### B. Tortious Interference With a Business Expectancy

Under Illinois law, the elements of tortious interference with a business expectancy are: "(1) [the plaintiff's] reasonable expectation of entering into a valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference." Botvinick v. Rush Univ. Medical Ctr., 574 F.3d 414, 417 (7th Cir. 2009), quoting Fellhauer, 568 N.E.2d at 878.  Hess cannot

---

[5]If the Clients had contracts with Hess, the Clients could terminate the contracts and end Hess' legal representation at any time and for any reason.  This is because the contracts were at-will contracts.  As such, Hess' tortious interference claim would fail even if the Defendants induced cancellation.  See FPI Prudential Ins. Co. of Am. v. Sipula, 776 F.2d 157, 162 (7th Cir. 1985)(under Illinois law, a defendant's inducement of the cancellation of an at-will contract constitutes at most interference with a prospective economic advantage, not interference with contractual relations); Accurso v. United Airlines, Inc., 109 F.Supp.2d 953, 962 (N.D.Ill. 2000) (same).

prove these elements.

Hess premises his claim on the Defendants' alleged interference with the liens Hess filed. <u>See</u> <u>Complaint</u> at 16-17, ¶ 70. Hess contends that filing the liens was his way of entering into a valid business relationship. Hess offers no support for the proposition that filing a lien against as client is a means of entering into a valid business relationship. Moreover, the liens were all adjudicated and found to be invalid. <u>See</u> <u>Thompson v. Skeffington, et al.</u>, No. 4-09-0762 (Ill.App.Ct. (May 26, 2010) (finding that respondent-appellant Hess' lien was invalid and imposing Rule 375 sanctions); <u>Loyd</u>, No. 5-09-0065 (Ill.App.Ct. (Oct. 15, 2010)(finding that respondent-appellant Hess' lien was invalid).

Given that Hess' liens were invalid, they obviously could not have been the basis for "validly enter[ing] a business relationship." <u>See</u> <u>Botvinick</u>, 574 F.3d at 417. It also follows that Hess could not have had a legitimate expectancy of ripening business with the clients' and Firm whose funds he liened. <u>Id.</u> Moreover, as Hess' liens were invalid, he suffered no damages when the Defendants contested his liens. <u>Id.</u>

### C. Tortious Interference With a Prospective Economic Advantage

To prevail on a claim for tortious interference with a prospective economic advantage, a plaintiff must prove: (1) his reasonable expectation of entering into a

valid business relationship; (2) the defendant's knowledge of the plaintiff's expectancy; (3) purposeful interference by the defendant that prevents the plaintiff's legitimate expectancy from ripening into a valid business relationship; and (4) damages to the plaintiff resulting from such interference. See Fellhauer, 568 N.E.2d at 878. Hess bases this claim on the alleged diversion of Clients from him and the loss of fees he might have earned if he worked on Clients' cases. See Complaint at 16-17, ¶ 60.

In his Employment Contract, Hess expressly agreed that in the event of his termination, he would not solicit or contact the Firm's clients. Id. at Section 8(c). As explained earlier, none of the Firm's clients belonged to Hess. Since Hess had no clients, none could be diverted from him. Moreover, he had no right to enter into a business relationship with clients he agreed not to solicit. Id. For these reasons, Hess cannot prevail on his prospective economic advantage claim. See Fellhauer, 568 N.E.2d at 878.

### *Unjust Enrichment and Quantum Meruit*

Under Illinois law, unjust enrichment is not a separate cause of action. "Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress, or undue influence, and may be redressed by a cause of action based upon that improper conduct." Alliance Acceptance Co. v. Yale

Ins. Agency, Inc., 648 N.E.2d 971, 977 (Ill. 1995), quoting Charles Hester Enters., Inc. v. Ill. Founders Ins. Co., 484 N.E.2d 349, 354 (Ill. 1985). Plaintiffs proceeding under Illinois law cannot raise unjust enrichment claims when "there is a specific contract that governs the relationship of the parties." Stathis v. Geldermann, Inc., 692 N.E.2d 798, 812 (Ill. 1998).

Quantum meruit is a quasi-contract doctrine that allows the Court to imply the existence of a contract in order to prevent injustice. See Hayes Mech., Inc. v. First Indus., 812 N.E.2d 419, 426 (Ill. 2004). To recover under a quantum meruit theory, the plaintiff must plead and prove the following: (1) he performed a service to the benefit of the defendant; (2) he did not perform this service gratuitously; (3) the defendant accepted this service; and (4) no contract existed to prescribe payment for this service. Installco, Inc. v. Whiting Corp., 784 N.E.2d 312, 318 (Ill. 2002). Under Illinois law, a party succeed on a quantum meruit claim if a contract governs the parties' relations. See Keck Garrett & Assoc., Inc. v. Nextel Comms., Inc., 517 F.3d 476, 487 (7th Cir.2008); see also Installco, 784 N.E.2d at 318 ("Where services are rendered under an express contract, there can be no quasi-contractual recovery.").

The only services Hess provided the Defendants were rendered pursuant to his employment contract with the Firm. As such, Hess cannot prevail on either his unjust enrichment claim or his quantum meruit claim.

***Intentional/Negligent Spoliation of Evidence and Conversion***[6]

Illinois law does not recognize a tort of intentional spoliation of evidence. See In Borsellino v. Goldman Sachs Group, Inc., 477 F.3d 502, 509-10 (7th Cir. 2007), citing Boyd v. Travelers Ins. Co., 652 N.E.2d 267, 269-70 (1995); Cangemi v. Advocate S. Suburban Hosp., 845 N.E.2d 792, 815 (2006) ("Plaintiffs cite to no case that specifically recognizes intentional spoliation of evidence as a tort in Illinois. Neither have we found such an Illinois case."). Accordingly, Plaintiffs cannot prevail on their intentional spoliation of evidence claim.

As for Plaintiffs' negligent spoliation of evidence claim, negligent spoliation is not itself an independent tort but rather a type of negligence. See Borsellino, 477 F.3d at 510. A claim of spoliation of evidence is connected to the merits of the underlying suit. Id., citing Gawley v. Ind. Univ., 276 F.3d 301, 316 (7th Cir. 2001). If a plaintiff cannot prevail in an underlying suit even with the allegedly lost or destroyed evidence, then a claim for spoliation will fail because the plaintiff cannot prove damages. Id.

To plead a spoliation claim, a plaintiff must allege the standard negligence elements: defendant owed a duty, the defendant breached that duty, and the

---

[6]In addition to these three claims, Hess' Opposition Brief refers to "trover", but says nothing else concerning such an action. Id. at 4. Since Hess' Complaint did not allege a trover claim and has not sought leave to amend his Complaint under Federal Rule of Civil Procedure 15 to add such a claim, trover will not be considered by the Court.

defendant's breach proximately caused plaintiff's damages.  See Dardeen v. Kuehling, 821 N.E.2d 227, 231 (Ill. 2004).  There is no general duty to preserve evidence.  See Boyd v. Travelers Ins. Co., 652 N.E.2d 267, 270 (Ill. 1995).  However, a duty to preserve evidence exists if: (1) it arises by agreement, contract, statute, special circumstance, or voluntary undertaking (called the "relationship" prong); and (2) a reasonable person should have foreseen that certain evidence at issue was material to a potential civil action (called the "foreseeability" prong).  See Dardeen, 821 N.E.2d at 231.  A plaintiff must satisfy both prongs of this test.  Id.

The Plaintiffs have neither pled that any Defendant had a duty by agreement, contract, statute to preserve evidence nor have the Plaintiffs alleged that a Defendant voluntarily undertook a duty to preserve the evidence.  Furthermore, the Plaintiffs do not allege that a reasonable person should have foreseen that any of the destroyed items would be material to this case.  The only materials that were destroyed here were some pleadings Hess accumulated from past cases, some birthday cards and business cards of professionals such as doctors and nurses.  See Hess Dep. at 34.  While those items had value to Hess, they are not related to the underlying merits of the dispute.  Thus, the destruction of those items provides no basis for a negligent spoliation claim.  See Borsellino, 477 F.3d at 510; Gawley, 276 F.3d at 316; Dardeen, 821 N.E.2d at 231.

Hess fairs no better on his conversion claim. To prove conversion, a plaintiff must show: (1) a defendant's unauthorized assumption of control of plaintiff's property; (2) plaintiff's right to the property; (3) plaintiff's right to immediate possession of the property; and (4) plaintiff's demand for the immediate possession of the property. See Bill Marek's The Competitive Edge, Inc. v. Mickelson Group, Inc., 806 N.E.2d 280, 285 (Ill. 2004). It is not necessary that money be specifically earmarked in order to sustain an action for conversion. An action for conversion may also be maintained where the converted funds are capable of being described, identified, or segregated in a specific manner. See Roderick Development Investment Co., Inc. v. Community Bank of Edgewater, 668 N.E.2d 1129 (Ill. 1996). A right to an indeterminate sum is insufficient to maintain a cause of action in conversion. See, e.g., Mid-America Fire & Marine Insurance Co. v. Middleton, 468 N.E.2d 1335 (Ill. 1984).

Hess' Complaint alleges that Kanoski and the Firm failed to pay him his salary, bonus money and vacation pay. However, in his deposition testimony Hess states that the Firm made direct deposits to his bank account for his salary, bonuses and vacation pay. See Hess Dep. at 103-107. Following Hess' termination, the Firm made a direct deposit to pay Hess all outstanding amounts it owed him. Id. When the Firm realized the amount of the direct deposit was too large, it reversed the deposit—but

the Firm took back more money than it should have.  See Hess Dep. at 103-106.  As such, Hess had an immediate right to the money and he exercised that right when he demanded payment from the Firm.  If that was were the facts ended, Hess would have a valid conversion claim capable of surviving summary judgment.  However, during his deposition Hess stated "we eventually worked it out".  Id. at 108.  Accordingly, the evidence shows that Hess received what he was owed by the Firm for outstanding salary, bonus and vacation pay.  Hess' conversion claim, therefore, cannot withstand summary judgment.

### Breach of Fiduciary Duty

Under Illinois law, a plaintiff may recover for breach of fiduciary duty where: (1) a fiduciary duty exists on defendant's part; (2) the defendant breached that fiduciary duty; and (3) damages proximately resulted from the breach.  See Lucini Italia Co. v. Grappolini, 231 F.Supp.2d 764, 770 (N.D.Ill.2002).  Courts have repeatedly held that a contractual relationship alone does not create a fiduciary duty. See, e.g., Prescott v. Allstate Life Ins. Co., 341 F.Supp.2d 1023, 1024 (N.D.Ill.2004); Pope v. Smith-Rothchild Fin. Co., 2003 WL 22889377, at *3 (N.D.Ill. Dec. 8, 2003), citing Oil Express Nat'l, Inc. v. Latos, 966 F.Supp. 650, 650-51 (N.D.Ill.1997). Furthermore, an employer-employee relationship does not create a fiduciary duty. See Hytel Group Inc. v. Butler, 938 N.E.2d 532, 548 (Ill.App.Ct. 2010).

Plaintiffs' Complaint alleges Kanoski and the Firm breached a fiduciary duty by not dealing fairly and honestly with Hess, interfering with his business opportunities, and by withholding information and providing false information to Hess. Id. at 7, 18. The Defendants contend they are entitled to summary judgment on the breach of fiduciary duty claim because Hess has shown nothing more than an employee-employer relationship and such a relationship creates no fiduciary duty. See Defendants' Brief at 31-32. Hess responded by arguing that the Defendants breached their fiduciary duty by luring clients away from him. See Opposition Brief at 37, citing Dowd and Dowd, Ltd. v. Gleeson, 693 N.E.2d 358 (Ill. 1998).

In Dowd, the Illinois Supreme Court found that a partner in a law firm may not lure "firm clients (even those the partner has brought into the firm and personally represented) to the new association". Id. at 474. While Hess quotes this exact language he seems not to digest that Dowd refutes his breach of fiduciary duty claim. The Clients were the Firm's and Hess was the lawyer who attempted to lure them to his new venture (i.e. his post-Firm law practice). Thus, Dowd's reasoning shows that it was Hess and not the Firm who breached a fiduciary duty.

In any event, because neither Hess' Employment Agreement, the general employee-employer relationship nor anything alleged by Hess created a fiduciary duty, dismissal is proper. See Lucini, 231 F.Supp.2d at 770; Prescott, 341 F.Supp.2d

at 1024; <u>Hytel</u>, 938 N.E.2d at 548.

*Conspiracy*

To state a claim for civil conspiracy, a plaintiff must allege: (1) an agreement between two or more persons; (2) to participate in an unlawful act, or a lawful act in an unlawful manner; (3) an injury caused by an unlawful overt act caused by one of the parties; and (4) the overt act was done pursuant to and in furtherance of a common scheme. <u>See</u> <u>Clarage v. Kuzma</u>, 795 N.E.2d 348, 358-59 (Ill.App.Ct. 2003), citing <u>Vance v. Chandler</u>, 597 N.E.2d 233, 236 (Ill. 1992). Hess cannot state a valid civil conspiracy claim.

Hess' Complaint alleges that the "defendants combined with each other to commit unlawful acts mentioned above or to cover up the unlawful acts mentioned above". <u>Id.</u> at 18. As such, Hess' allegations fail to assert an agreement between the Defendants. Furthermore, since the "unlawful acts" he alleges are nothing more than the various invalid claims discussed earlier in this Opinion, Hess has not stated a single predicate act upon which a conspiracy count might rest. Finally, because Hess fails to state an unlawful act, he cannot show that an unlawful act caused any harm. For these reasons, the Defendants are entitled to summary judgment on Hess' civil conspiracy claim.

*Loss of Consortium*

28

Lastly, Plaintiff Vickie Warren (Hess' wife) asserts a loss of consortium claim. A loss of consortium is derivative of harm suffered by one's spouse. See Monroe v. Trinity Hosp.-Advocate, 803 N.E.2d 1002, 1005 (Ill.App.Ct. 2003). Because Hess cannot prevail on any of his claims, his wife cannot show a loss of consortium. Accordingly, the Defendants are entitled to summary judgment on this claim.

## CONCLUSION

THEREFORE, the Defendants' Motion for Summary Judgment Or In the Alternative Motion to Dismiss (d/e 36) is ALLOWED. The Plaintiffs' claims are DISMISSED WITH PREJUDICE. The case is CLOSED.

ENTERED this 11th day of March, 2011

s/ Michael P. McCuskey
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE