E-FILED
Friday, 28 March, 2014 07:48:46 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| LAWRENCE J. HESS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 3:09-cv-03334-SLD-JAG ) |
| KANOSKI & ASSOCIATES, a Professional Corporation, | ) ) ) ) |
| Defendant. | ) |

# ORDER

Plaintiff Lawrence Hess has sued Defendant Kanoski & Associates ["K&A"] for bonus compensation based on cases resolved after K&A fired him. In *Hess v. Kanoski & Assocs.*, 668 F.3d 446 (7th Cir. 2012) ("*Hess I*"), the Seventh Circuit affirmed summary judgment against Hess on all but two counts of his claim—for breach of contract and violation of the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*—and remanded with instructions to (1) "interpret the contract" between Hess and K&A and (2) "consider the merits of Hess's theories" on the two remaining counts. *Id.* at 454.

Before the Court are K&A's Motion for Summary Judgment, ECF No. 92, on both counts and Hess's Motion for Partial Summary Judgment, ECF No. 95, on the breach of contract claim. Because the briefings and exhibits exhaustively present the issues, the Court finds that a hearing would be unnecessary, and DENIES K&A's Request for Oral Argument on its Motion for Summary Judgment, ECF No. 93. For the following reasons, Hess's Partial Motion for Summary Judgment is DENIED, and K&A's Motion for Summary Judgment is GRANTED.

1

# BACKGROUND

K&A—which in 2013 became "Kanoski Bresney"—is a personal injury law firm serving Central Illinois. Pl.'s Mot. Summ. J., ECF No. 95, Ex. A. During the period relevant to this case, Ronald Kanoski was K&A's president, responsible for administration of the firm. *Id.*, Ex. D at 13–15. In 2001, after deciding to branch out into medical malpractice suits, Kanoski hired Hess. Def.'s Mot. Summ. J., Ex. D at 17–19. Under a May 9, 2001 written Employment Agreement, Hess became an associate attorney for K&A.

In addition to a starting salary of $60,000, section 4 of the Employment Agreement provides that Hess would receive bonus pay as follows: "15% of all fees generated over the base salary (or $5,000 per month) with a guarantee of One Hundred and Twenty-Five Thousand ($125,000). Bonus pay shall increase to 25% on all fees received annually in excess of $750,000." Pl.'s Mot. Summ. J., Ex. B at 2–3. The Agreement states that Hess had no proprietary right or interest in the clients on whose cases he worked while at K&A. *Id.* at 4. The Agreement also gives Hess the right to 30-day written notice before termination. *Id.* at 2. Should he be discharged, Hess promises not to contact K&A's clients, and if any client obtained through K&A should choose to retain Hess instead of K&A, Hess covenants to compensate K&A. *Id.* at 4–5. To that end, section 8(d) of the Agreement provides:

> (ii) If client originally hired the corporation or the contact for the claim came to the Employee while the Employee was employed by the Corporation, the parties agree and covenant that the Corporation shall always receive Thirty-three and One-third (33 1/3) percent of any fee received by Employee under such circumstances. (iii) The remaining Sixty-six and Two-thirds (66 2/3) percent of the fee shall be divided in the following manner. The parties agree to divide the fees by determining the time from which the file was opened until its disposition is final, with the fee being divided pro rata between the Corporation and the Employee based upon the actual time each represented the client. . . .

*Id.* at 5.  Section 8(d)(iv) covers the scenario where the client remains with K&A following Hess's departure, and provides: "Employee acknowledges that . . . Employee has no proprietary interest in fees to be earned since the Employee is to be fully compensated through his salary and/or bonus for all work done while an Employee of the Corporation."  *Id.*

Hess started his career at K&A on these terms, but the following year, after obtaining a large jury verdict in a medical malpractice case, he renegotiated his compensation.  Pl.'s Mot. Summ. J. 21.; *see also* Def.'s Reply 6, ECF No. 100.  A June 21, 2002 letter to Hess from Ronald Kanoski, entitled "Terms of Employment," states that it "confirm[s] our recent salary and bonus negotiations."  Pl.'s Mot. Summ. J., Ex. C.  Hess's annual salary was raised to $100,000.  Regarding the bonus, the letter states that Hess "will be eligible to receive as a bonus 40% of all fee revenue generated except as follows: a) no bonus will be paid on the first $100,000 of annual fee revenue generated; and, b) if it is otherwise eligible, only a 10% bonus will be paid for fees generated on the Robert Thompson file."  *Id.*

On February 14, 2007, Kanoski fired Hess without 30-day notice.  *Hess I*, 668 F.3d at 453.  Pl.'s Mot. Summ. J. 22.  Kanoski characterized the decision as economic, claiming it was based on Hess's failure to generate sufficient revenue for the firm.  Def.'s Mot. Summ. J., Ex. D at 56–59, ECF No. 92.  K&A transferred many of Hess's cases to an independently-contracting lawyer, Kennith Blan, Jr., who settled a number of them over the subsequent year and a half.  *Hess I*, 668 F.3d at 450.  At the time of his termination, K&A had paid Hess bonuses on all cases that were resolved during his employment.  Pl.'s Mot. Summ. J. 5–6; Def.'s Mem. in Supp. Summ. J. 5, ECF No. 92.  Hess claims he is also entitled to bonuses on his cases that settled after his termination.  *See Hess*, 668 F.3d at 451.

3

Hess believed K&A fired him because it did not want to pay him a bonus on these settlements, and in May 2008 letter, unsuccessfully demanded that K&A pay him $316,616.21 in unpaid bonuses. *Id.* at 450. He also filed attorney's liens in Illinois state court in two of his former cases at K&A: *Thompson v. Skeffington*, 988 N.E.2d 1131 (Table) (Ill. App. Ct. May 26, 2010) and *Loyd v. Billiter*, 993 N.E.2d 156 (Table) (Ill. App. Ct. Oct. 15, 2010) ("*Loyd I*"). Def.'s Mot. Summ J., Ex. F (*Thompson*) & G (*Loyd I*), ECF No. 92. The Illinois courts rejected the liens on the grounds that Hess no longer had an attorney-client relationship with Thompson or the Loyds. *See Hess*, 668 F.3d at 450; Def.'s Mot. Summ. J., Ex. F at 14, Ex. G at 4.[1]

After preliminary failures in state court, Hess filed an 11-count complaint against K&A, Kanoski, and Blan in this Court on December 23, 2009, based on diversity of citizenship under 28 U.S.C. § 1332. The Court rejected Hess's IWPCA claim after finding that Hess had admitted in a deposition that K&A paid him all he was due, and held that collateral estoppel barred Hess from seeking bonus compensation based on the *Loyd I* finding that Hess's contract with K&A "would bar any claim he has for further compensation." Opinion of March 14, 2011 at 8–9, 11, ECF No. 50.

Hess appealed. The Seventh Circuit reversed on Hess's IWPCA and breach of contract claims, holding that Hess only admitted to receiving already-earned bonuses in his deposition, not those based on fees received by K&A following his discharge. *Hess*, 668 F.3d at 450–51. The Court further held that neither *Thompson* nor *Loyd I* serves as a basis for issue preclusion because the state courts only determined Hess's right to compensation from his former clients,

---

[1] The underlying case in *Thompson* settled on July 14, 2009, and *Loyd I* settled on September 1, 2008. Def.'s Mot. Summ. J. Ex. D (9 & 10).

4

not from his former employer. *See id.* at 452.[2]

At issue on remand are Hess's IWPCA (Count I) and breach of contract (Count II) claims against K&A. *See* Am. Compl., ECF No. 71. Hess moves for summary judgment on the issue of liability for breach of contract, arguing that the parties' agreement unambiguously grants him a right to post-termination bonus compensation. Pl.'s Mot. Summ. J. 1. K&A claims it is entitled to summary judgment on Count I because Hess's contractual bonus compensation is of a type not protected by the IWPCA, and on Count II because: (1) the contract language unambiguously defeats Hess's theory for compensation; (2) res judicata bars Hess's claim; and (3) Hess's proposed contract interpretation is unenforceable because it would violate law and public policy. *See* Def.'s Mem. in Supp. Summ. Judg. 1–2.

## DISCUSSION

**I. Standard on Summary Judgment**

Summary judgment is the "put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2003) (internal quotation marks omitted). A court should grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). At the summary judgment stage the judge's function is not

---

[2] The Seventh Circuit observed that Hess, at the least, "has a good argument" that his contract entitled him to bonus compensation based on fees received by K&A in the 30 days following his dismissal, as he was fired without 30-day notice in violation of the agreement. *See Hess I*, 668 F.3d at 450. However, Hess concedes on remand that all of the cases from which he is seeking bonus compensation settled more than 30 days after his discharge from K&A on February 14, 2007. *See* Pl.'s Mot. Summ. J. 13.

to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial—that is, whether there is sufficient evidence favoring the non-moving party for a jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Patel v. Allstate Ins. Co.*, 105 F.3d 365, 370 (7th Cir. 1997). There can be no genuine issue as to any material fact when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## II. Interpretation of Employment Agreement

The elements of a cause of action for breach of contract under Illinois law are: "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages." *W.W. Vincent & Co. v. First Colony Life Ins. Co.*, 814 N.E.2d 960, 967 (Ill. App. Ct. 2004) (citation omitted). The parties do not dispute that Hess had a valid, enforceable contract upon which he substantially performed. *See Hess I*, 668 F.3d at 451. The issue is whether K&A breached the Employment Agreement when it refused to pay Hess a bonus on cases that settled after his dismissal from K&A.

### A. Legal Framework for Contract Construction

Under Illinois law, construction of a contract is a question of law. *Gallagher v. Lenart*, 874 N.E.2d 43, 50 (Ill. 2007) (citations omitted). The primary goal of contract interpretation is to give effect to the intent of the parties by considering the document as a whole and not focusing on isolated portions. *Id.* at 58. "A court must initially look to the language of the contract alone, as the language, given its plain and ordinary meaning, is the best indication of the parties' intent." *Id.* If the language, however, is ambiguous—that is, "susceptible to more than one

6

meaning"—a court may consider extrinsic evidence to determine the parties' intent. *Id.* Ambiguity will also be found if contract language is "obscure in meaning through indefiniteness of expression." *Central Illinois Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004) (internal quotation omitted). However, the mere fact that the parties disagree on its meaning does not render a contract ambiguous. *Id.* (citation omitted).

Courts should not interpret a contract in a way that would render meaningless or nullify provisions, or in a way contrary to the plain and obvious meaning of the language used. *Thompson v. Gordon*, 948 N.E.2d 39, 47 (Ill. 2011) (citation omitted). "[W]hen parties agree to and insert language in a contract, it is presumed that it was done purposefully, so that the language employed is to be given effect." *Id.* (citation omitted). Also, where possible, courts should construe a contract so that its provisions are harmonized and not in conflict. *Henderson v. Roadway Exp.*, 720 N.E.2d 1108, 1111 (Ill. App. Ct. 1999) (citation omitted). Whether a contract is ambiguous is a question of law for the Court to decide. *Richard W. McCarthy Trust Dated Sept. 2, 2004 v. Illinois Cas. Co.*, 946 N.E.2d 895, 903 (Ill. App. Ct. 2011) (citation omitted).

**B. Analysis**

K&A argues that is entitled to summary judgment on this issue because: (1) the Employment Agreement bars Hess's claims for unpaid bonuses from post-termination settlement of his cases and (2) Hess's claims are based on a construction of the Employment Agreement that would render it illegal and unenforceable. Def.'s Mem. in Supp. Mot. Summ. J. 1–2. Hess counters that he is entitled to summary judgment because K&A has breached the contract by failing to pay Hess bonus money for all fees generated by Hess while a K&A employee,

regardless of when the cases were actually resolved and K&A received the fees. Pl.'s Mot. Summ. J. 3. Both parties maintain that the terms of Hess's employment unambiguously support their position.

Section 4 of the Employment Agreement and the June 2002 letter modification state that Hess is entitled to a bonus based on fees "generated" and "received." *See id.*, Ex. B at 2–3 & Ex. C. K&A maintains that "generated" and "received" are used interchangeably in section 4 to mean that Hess is entitled to a bonus once a contingency fee has been received by the law firm. Def.'s Resp. Mot. Summ. J. 16–17, ECF No. 99. Logically, fees received post-termination are not received by the firm in time to pay Hess a bonus. Moreover, K&A argues, Hess cannot be entitled to compensation based on fees received by the firm after his termination because in section 8(d)(iv) of the Agreement he expressly disavows any "proprietary interest in fees to be earned" following discharge. *Id.* at 16.

For his part, Hess claims the dictionary definitions of "generate" and "receive" are not synonymous; one can clearly "generate," or create, value that one has not come into possession of, or "received." *See* Pl.'s Mot. Summ. J. 23–24; *Oxford English Dictionary Online*, http://www.oed.com/view/Entry/77517 (defining "generate") (last visited Feb. 7, 2014); *id.*, http://www.oed.com/view/Entry/159411 (defining "receive") (last visited Feb. 7, 2014) . Additionally, there is no provision in the Agreement that makes payment of bonus money contingent on Hess being employed at K&A when a case is settled or K&A receives the fee. *Id.* at 3. While section 8(d)(iv) disclaims his interest in fees generated, Hess argues, he is not seeking a portion of the attorney's fees K&A receives, but rather the bonus he is contractually entitled to for his work on the cases generating the fees. *Id.* at 2. Hess maintains that the fees at

issue were "generated" all along as he performed work on the case, and not merely when the ultimate settlement occurred upon which the receipt of fees was contingent.

### 1. When Fees Are "Generated"

The first issue, therefore, is when the fees are "generated" under the contract. *See Hess*, 668 F.3d at 453. The evidence demonstrates that Hess's cases were paid on a contingency-fee basis. His interpretation of "generated" ignores fundamental principles underlying these arrangements. An attorney is not contractually entitled to a fee unless and until her client wins, and, therefore, always bears the risk of loss. Here, unless and until the contingency underpinning the contracts at issue occurs, nothing even exists for K&A to divide with Hess. When Hess was terminated by K&A, there was no guarantee that any of his efforts would result in contingency fees accruing in the cases at issue. Therefore, the fees could not yet have been generated. By contrast, reading "generated" and "received" as synonyms in this context, as K&A advocates, accords with the basic structure of contingency fee arrangements—bonuses are easily calculated based on contingency fees "received" by the firm.

Hess finds significance in the parties' use of "generate" in the first sentence of section 4 and "received" in the second sentence. *See Thompson*, 948 N.E.2d at 47 ("[W]hen parties agree to and insert language in a contract, it is presumed that it was done purposefully, so that the language employed is to be given effect."). However, he provides no convincing explanation that the parties did, in fact, intend distinct meanings for the terms. Section 4 sets forth a two-tiered schedule for bonus compensation. The first sentence of section 4 governs until fees surpass the $750,000 benchmark, when the second sentence's rate kicks in. Hess does not explain why the parties would devise two different bonus calculations: the first tier based on Hess's efforts on a

9

case—requiring a messy inquiry into facts, and ultimately meaningless if the case did not break in K&A's favor —and the second based on fees received by the firm, a far more readily ascertainable figure. No such seemingly-purposeless complication exists if the terms are read interchangeably. The language of section 4 thus suggests that the parties viewed the terms as synonyms. The sole use of "generated" in the letter modifying section 4 provides no indication that this understanding changed.

Moreover, Hess's interpretation falls apart when read in context of the agreement as a whole. *See Henderson*, 720 N.E.2d at 1111. In section 8, the parties comprehensively addressed client and compensation arrangements in the event Hess and K&A parted ways. In section 8(d)(ii)–(iii), they made detailed provision for a division of fees between Hess and K&A in the event a client remains with Hess following termination. Section 8(d)(iv) is the counterpart provision—it states in no uncertain terms that, where the client remains with K&A, Hess is entitled to nothing for his work on the client's case beyond the salary and bonus Hess received as a K&A employee.

If the parties intended for Hess to receive compensation for cases resolved after his departure, they made no provision to do so. Section 8(d)(iii) shows that the parties were willing and able to detail K&A's portion of any post-termination fees recovered from a former K&A client retained by Hess. In light of the parties' care in detailing a method for pro rating K&A's compensation in that instance, the absence of a similar formula—or even the barest mention of a need to pro rate fees—in the event the client stayed with K&A further indicates that the possibility of compensating Hess after his termination was not contemplated by the parties when reaching their agreement.

## 2. Purpose of Section 8(d)(iv)

Regardless of the meaning of "generated," Hess argues, section 8(d)(iv) independently provides him with a right "to be fully compensated for all work done while an Employee of the Corporation." Pl.'s Mem. in Supp. Mot. Summ. J. 9–10. Hess argues that section 8(d)(iv) distinguishes attorney's fees from the compensation K&A pays its attorney based on his work generating those fees. Pl.'s Mem. in Supp. Mot. Summ. J. 10. Hess admits he has no proprietary interest in the fees K&A received from his cases after his termination, he agrees, as the state courts recognized in denying his attorney's liens. He argues instead that he is "to be fully compensated through his salary and/or bonus," which—although calculated based on the fees generated—section 8(d)(vi) clearly distinguishes from the fees themselves, which are K&A's property, Hess argues. *Id.*

Hess's argument plucks this language out of context, giving it a meaning out of harmony with the surrounding provisions. *See Henderson,* 720 N.E.2d at 1111. This provision is a limitation, not an expansion, of Hess's contractual rights. Its counterparts, sections 8(d)(ii) and 8(d)(iii), proportionately reduce Hess's share in the contingency fee where he keeps the client and sees the case through to completion. It therefore strains credulity to believe that, where K&A keeps the client and performs the work necessary to settle or win the case, the parties agreed that Hess was still entitled to his full, pre-termination share.

Under Hess's view, there is potentially no limit on the duration of K&A's liability. Cases for which Hess performed minimal initial work could persist many years after he left K&A. Is K&A to come back, several years later, and award Hess a 40% bonus on a case where he sat in on one meeting or did a single hour of research? It is unlikely that K&A would have agreed to

11

such open-ended liability. Moreover, section 8(d)(iv)'s only applicability is in the post-employment period. To read section 8(d)(iv) as guaranteeing Hess's right to post-termination bonuses based on fees later received by K&A, one would have to ignore that it simultaneously guarantees Hess salary compensation, which Hess does not—nor reasonably could—assert that he still accrued after he stopped working for K&A.

Lastly, Hess's interpretation of section 8(d)(iv) does no more work than reiterate that Hess has no proprietary interest in the fees themselves, because section 2(a) provides that "[a]ll proceeds received by [Hess] for professional services rendered for Corporation clients shall be the property of the Corporation," and Hess's compensation rights are separately secured in section 4 and its letter modification. Adopting Hess's view would render at least one of these provisions wholly redundant. *See Thompson*, 948 N.E.2d at 47. By contrast, under K&A's reading, section 8(d)(iv) complements section 8(d)'s other provisions and does independent work in addressing the otherwise-unaddressed issue of how Hess should be compensated after he has been terminated and lost his client.

### 3. Summary

Unsurprisingly, neither party's reading of this imperfectly drafted contract is perfect. However, viewed in light of the contract as a whole, K&A's interpretation paints a consistent, logical picture while Hess's reading is unwieldy, far-fetched, and ultimately untenable. Because the contract is only susceptible to K&A's interpretation, it is not ambiguous, and the Court must interpret it as a matter of law, without resort to extrinsic evidence. *See Gallagher*, 874 N.E.2d at 50, 58; *Richard W. McCarthy Trust*, 946 N.E.2d at 903–04. Under its unambiguous meaning, Hess has no right to bonuses based on cases resolved after his termination, because the

contingency fees upon which his bonus depends were not yet "generated" through the disposition of those cases. Therefore, K&A did not breach the agreement by refusing to pay bonuses based on contingency fees it later reaped from these cases. Because the parties' agreement unambiguously precludes Hess's claim to bonus compensation from cases resolved post-termination, the Court does not reach K&A's other arguments. Hess is denied summary judgment on the issue of breach of contract. K&A is granted summary judgment, dismissing Count II.

**IV. Illinois Wage Payment and Collection Act Claim**

Hess's Count I argues that he was entitled to the post-termination bonus compensation from K&A within one month of his discharge under the IWPCA. Am. Compl. 4.

**A. Legal Framework**

The IWCPA generally safeguards current and former workers' rights to timely receipt of their wages. 820 ILCS 115/1 *et seq*. The statute terms the payments to former employees "final compensation," which it defines as "wages, salaries, earned commissions, earned bonuses, and the monetary equivalent of earned vacation and earned holidays, and any other compensation owed the employee by the employer pursuant to an employment contract or agreement between the two parties." 820 ILCS 115/2. Section 5 of the IWPCA provides that "[e]very employer shall pay the final compensation of separated employees in full, at the time of separation, if possible, but in no case later than the next regularly scheduled payday for such employee." 820 ILCS 115/5.

Hess's agreement with K&A only called for compensation in the form of salary and bonuses, and Hess does not claim K&A has withheld his salary. Because Hess is a separated

13

employee, his IWPCA claim therefore falls under the "earned bonus" category of "final compensation." *See* 820 ILCS 115/2. As a professional employee, the statutory period in which his "final compensation" was due was one month following termination. *See* 820 ILCS 115/3.

The IWPCA does not define "earned bonuses." The few courts to interpret this term have generally concluded that IWPCA only covers bonuses "unequivocally promised" by the employer, while conditional or discretionary bonuses are not "earned." *See, e.g., McLaughlin v. Sternberg Lanterns, Inc.*, 917 N.E.2d 1065, 1071 (Ill. App. Ct. 2009); *Birkholz v. Corptax, LLC*, No. 1-11-0553, 2011 WL 10088322, at *3–*5 (Ill. App. Ct. Nov. 8, 2011). Bonuses based solely on individual production or individual performance, by contrast, are "earned." *Birkholz*, 2011 WL 10088322, at *3; *see McLaughlin*, 917 N.E.2d at 1071 (explaining that unequivocal right to "earned bonus" under Illinois Administrative Code[3] means employee has no right to it until she has performed the contract requirements).

The *McLaughlin* court found that the bonus at issue there was "clearly conditional" and not "unequivocally" guaranteed because it depended on whether and by how much the employer's sales increased that year. 917 N.E.2d at 1071. Further, because the amount of the claimed bonus depended on a factor that could not be determined until after year's end and hence not within the next pay period, the court held that it would render section 5 of the IWPCA meaningless to require that the bonus be paid before its amount was ascertainable. *Id.* at 1072

---

[3] The Illinois Administrative Code interprets "earned bonus" in the IWPCA as follows:
    a) A claim for an earned bonus arises when an employee performs the requirements for a bonus set forth in a contract or an agreement between the parties. b) A former employee shall be entitled to a proportionate share of a bonus earned by length of service, regardless of any provision in the contract or agreement conditioning payment of the bonus upon employment on a particular date, when the employment relationship was terminated by mutual consent of the parties or by an act of the employer through no fault of the former employee.
56 Ill. Adm. Code § 300.500.

(citing *Madison Two Assocs. v. Pappas*, 884 N.E.2d 142, 155 (2008) ("[W]henever possible courts must construe statutes so that no part is rendered a nullity.")) Similarly, *Birkholz* held that a bonus that depended on the company's overall year-end performance as well as the employee's adherence to company standards was not based solely on individual performance and thus not "earned." 2011 WL 10088322, at *4. Among the reasons cited by a federal district court in finding a bonus not "earned" under the IWCPA were that the employment contract made no unequivocal statement that employees are paid bonuses each year and expressly disclaimed any right to a bonus. *In re Comdisco, Inc.*, Nos. 02 C 7030, 02 C 7031, 2003 WL 685645, at *6 (N.D. Ill. Feb. 27, 2003).

**B. Analysis**

K&A argues that Hess's bonus was not "earned" and therefore falls outside the scope of the IWPCA's protection of "final compensation." The Court agrees. Hess's bonus was not based solely on his performance. Regardless of his performance, if the cases he worked on were not decided or settled in K&A's clients' favor, there would be no contingency fees to drive Hess's bonus. Hess was in the same position as the employees in *McLaughlin* and *Birkholz*, whose right to a bonus was bound up in and determined by the performance of independent actors. *See McLaughlin*, 917 N.E.2d at 1071; *Birkholz*, 2011 WL 10088322, at *4. Similarly, Hess's contract, as modified, made no promise that a bonus would be paid, instead expressly denying him any bonus if Hess generated no more than $100,000 annually in fees. Pl.'s Mot. Summ. J., Ex. C; *see Comdisco, Inc.*, 2003 WL 685645, at *6.

Additionally, there is no dispute that all of the cases for which Hess is claiming bonus compensation settled more than 30 days after his discharge from K&A on February 14, 2007.

15

*See* Def.'s Mem. in Supp. Mot. Summ. J. 5; Pl.'s Mot. Summ. J. 13. It would have been impossible for K&A within that 30-day period to pay Hess a bonus whose amount could only be determined by yet-to-occur disposition of cases. As *McLaughlin* held, it would be absurd to read section 5 of the IWPCA to penalize an employer for failing to pay a bonus within a period in which its amount—or whether it was due at all—could not possibly be ascertained. *See McLaughlin*, 917 N.E.2d at 1072. Hess does not point to facts to the contrary or respond to K&A's argument regarding "final compensation." Indeed, he does not even address his IWPCA claim in any of his briefings on summary judgment.

Accordingly, the compensation Hess seeks is not protected by the IWPCA as an "earned bonus." While the parties' contract unambiguously grants Hess the right to bonus compensation based on the fees that did accrue to K&A from Hess's cases, the inherently conditional nature of bonuses based on the occurrence of case settlements or court awards means that Hess is not entitled to these bonuses as "final compensation" under the IWPCA. K&A is granted summary judgment, dismissing Count I.

## CONCLUSION

Defendant K&A's Request for Oral Argument on its Motion for Summary Judgment, ECF No. 93, is DENIED. Plaintiff Hess's Partial Motion for Summary Judgment, ECF No. 95, is DENIED. K&A's Motion for Summary Judgment, ECF No. 92, is GRANTED. Counts I and II are dismissed with prejudice. The Clerk is directed to enter judgment, closing the case.

Entered this 28th day of March, 2014.

s/ Sara Darrow
SARA DARROW
UNITED STATES DISTRICT JUDGE